DANIEL LOVE, APPELLANT, *vs.* JAMES GIBSON, APPELLEE.

Where money, sought to be recovered under a count for money paid, has been paid under a judgment against the plaintiff, the record of the judgment is always admissible to prove the *fact* of the judgment and the amount so recovered. For such purpose it cannot be considered as *res inter alios acta.*

Where, in a suit against one of two sureties, judgment is fairly obtained against him, and no collusion existed between him and the party recovering judgment or the principal obligor of the bond, if notice of the pendency of such suit has been given to his co-surety, the latter stands virtually in privity with him against whom judgment has been obtained. The co-surety in such case is bound to avail himself of any defence he may have, and will not be permitted afterwards, in a suit for contribution brought against him by his co-surety who has paid and satisfied the judgment, to set up any defence which he ought to have pleaded in the original suit upon the bond, by becoming a party for that purpose. It was his duty to join in the defence to the action. Having failed to do so, though he had full notice

of the pendency of the action, he waives all defences he might have had; and in a suit for contribution against him by the co-surety, the judgment is to be deemed res adjudicata.

The payment of a debt by the surety, on default of the principal is not deemed a voluntary, but a compulsory payment, and the action for contribution may be maintained, though no demand has been made or action brought on the original liability.

Appeal from Gadsden Circuit Court.

An action of *assumpsit* was commenced by Gibson against Love in April, 1846. The plaintiff's declaration contained a special count setting forth that he and defendant were joint and several sureties for one John C. Love, on his bond as executor of John Colson, deceased, which bond was given in 1839, for $18,000, conditioned for the faithful discharge of the duties of executor by the said John C. Love. That in 1845 a suit was instituted on this bond against plaintiff for the use of the heirs of John Colson, and a judgment obtained in said suit for the penalty of the bond to be discharged by the payment of $2,792 88; all which appeared by the record of proceedings in said suit. That in April, 1846, the plaintiff paid off and fully satisfied the judgment so obtained, with the interest thereon; by reason whereof the defendant became liable to pay to plaintiff the sum of $1,396 40, being the aliquot part of the principal of said judgment.

The declaration also contained a count for money paid, laid out and expended.

To the first count of this declaration the defendant demurred, and to the other pleaded *non assumpsit*. The Court overruled the demurrer to the first count and gave leave to answer over.

The defendant then pleaded to said first count,

1. *Non assumpsit.*

2. That plaintiff was not compelled to pay any part of the said bond.

3. That although suit was instituted upon said bond, as alleged in plaintiff's declaration, yet the same was not regular nor legal; nor had the plaintiff in the suit upon the bond any legal right of action against Gibson, the plaintiff in this suit, as surety for John C. Love upon his bond as executor, at the time of the institution of said suit; nor did the declaration therein contain any good and valid cause of action against Gibson; but the same might have been resisted and defeated. Yet that said Gibson did not resist said action, but per-

mitted it to proceed against him, and allowed judgment to be taken without availing himself of the want of a proper cause of action, and of the absence of all legal claim and demand against him at that time as surety, as aforesaid. That therefore the plaintiff has waived, abandoned and lost all right of contribution and recourse against defendant as co-surety.

4. That though there was a suit against Gibson as surety on the bond, as alleged, yet it was wholly irregular and illegal, and might have been resisted and defeated, because the said suit was brought against Gibson, the surety, before recovery had against Love, the principal. Yet said Gibson, the plaintiff in this suit, did not resist said action, but failed to make defence. Wherefore he has wholly lost all right to contribution and recourse against said defendant for any part of said bond not due nor payable by said sureties by law.

5. That by the 31st section of an act of the Territory, approved Nov. 20, 1828, in relation to wills, letters testamentary, &c., it was and is provided that, " whenever it shall appear satisfactorily to the county court or judge, on the petition of any legatee, heir or security, that any executor who has taken out letters testamentary on the estate of any testator, is either mismanaging or wasting the estate of the deceased, it shall be lawful for the said court or judge to revoke the said letters testamentary and appoint one or more appraisers of the said estate, or to require good and sufficient security, by bond to be filed by the said executors, *for the further due administration* of said estate." That prior to the date of said bond the said Love had taken out letters testamentary on the said estate of Colson and, on petition of the heirs was required to give bond according to law, and the bond in plaintiff's declaration mentioned was given under this requirement and was intended and declared to be in pusuance of said statute, whereas said bond is not, as required by law to be, conditioned " for the further due administration" of said estate, but was attempted to be made to cover waste before the date and delivery thereof done and committed by said Love, and to make good defaults already incurred. That the bond is void for the excess beyond the security, " for the further due administration" of said estate, and plaintiff has not been compelled to pay any money as surety on account of any waste committed after the delivery of said bond, nor to make good any default since incurred.

6. That though the bond was executed and delivered and suit in-

stituted thereon, as alleged, yet that no valid breach of the condition of said bond was assigned in the declaration in said writ, and no legal cause of action therein set forth; and that plaintiff was then and there so advised by the defendant in this suit; and before the rendition of the judgment in said suit, the plaintiff was called upon and required by defendant to defend and resist the action by all legal ways, but that plaintiff neglected so to do, and permitted the judgment to be rendered therein, and hath since paid the amount thereof, though not legally compelled so to do. And that therefore plaintiff has lost all legal right and remedy of contribution against defendant.

7. To the second count of plaintiff's declaration defendant further pleaded that plaintiff did not pay, lay out and expend $3000, as alleged.

Issue was joined on the first plea. To the second there was a demurrer assigning for cause that the matter thereof, as set forth, amounts to the "general issue" and that the plea itself is uncertain, informal and insufficient.

Replication to the third and fourth and issue tendered—that plaintiff did resist and defend the action on the bond.

Demurrer to the fifth and causes assigned: 1. That defendant by said plea seeks to raise an issue upon the legality of the bond on which judgment was had against plaintiff as surety, and in consequence of which, having paid the same, plaintiff here sues for contribution. 2. That by said plea defendant seeks to make an issue on the legality and propriety of the verdict of the jury in the suit on the bond. 3. That the plea is double and otherwise informal and insufficient.

To the sixth plea plaintiff replied, tendering issue, that he did not fail and neglect to make legal defences to the action, nor permit judgment therein, but did defend said suit as advised by his counsel.

Issue was joined on the seventh plea of defendant.

The defendant demurred to plaintiff's replication to the third plea, because :—1. It does not aver that in the suit on the bond there was a good and valid cause of action against said plaintiff set forth in the declaration. 2. It does not contain a full and sufficient answer to said third plea. Defendant also demurred to the replication to the fourth plea :—1. Because it does not aver that in the suit on the bond there had been a recovery against Love, the principal, before suit brought against plaintiff, the surety. 2. Because of its not being a full and sufficient answer to the fourth plea.

Demurrer to replication to the sixth plea :—1. Because it does not aver that in the suit on the bond a valid breach of the condition thereof was assigned in the declaration in said suit.  2. Because it does not traverse that he was advised and required by defendant, before judgment in said suit, to resist the same by all legal ways.  3. Because it is not a full and sufficient answer.

The Court sustained the plaintiff's demurrer to the second and fifth pleas—overruling those of defendant to plaintiff's replication to the fourth and sixth pleas, and sustaining defendant's demurrer to the replication of plaintiff to the third plea.

The plaintiff thereupon amended his replication to the third plea by inserting therein that there was a good and valid cause of action set forth in the declaration in the suit against him on the bond.

And afterwards, at the Spring term of the Circuit Court in and for the County of Gadsden, A. D. 1848, the Hon. THOMAS BALTZELL presiding, the cause came on to be tried, and a verdict and judgment were given for plaintiff.

From the bill of exceptions, it appears that, on the trial of this cause in the Court below, the plaintiff offered in evidence the bond of John C. Love, executor, dated 13th April, 1839, on which plaintiff and defendant were sureties.  Defendant objected, on the ground that, being a statutory bond, the plaintiff must show that it was required in manner and form as enjoined by the statute, but the Court admitted the bond in evidence.    Plaintiff then offered the record of the suit on the bond against him, showing a judgment for $2,792 80, and a receipt showing payment and satisfaction thereof by him.    A record from the Probate Court, showing the amount adjudged against John C. Love, executor, by auditors appointed to settle his accounts, which was simply the report of said auditors of the 2d of Sept., 1844, and the decree of the Judge of Probate thereon, given 21st April, 1845, was next offered in evidence by plaintiff.    To this defendant objected, because the record contained no evidence of liability in favor of the plaintiffs in the suit on the bond sufficient to charge the sureties—because, also, the decree of the Judge did not specify the parties entitled, and, further, because it did not appear that the executor was before the Court when the accounts were settled, and the decree made.  The Court admitted the record, after testimony of D. L. White, (to which testimony defendant likewise objected,) showing that the proceedings were had at the instance of the

executor, through a petition which cannot now be found, and that he selected the auditors. D. L. White was at that time Judge of the County Court, acting as a Court of Probate.

Here the plaintiff rested his case.

Defendant then proved that neither the heirs nor legatees of Colson applied to remove the executor, or to lay him under security. He read to the jury the record of a suit against the executor as principal on the bond, and offered in evidence a mortgage given by the executor, Love, to Gibson, the plaintiff in this suit, to secure him against loss on account of suretyship, but, on objection from plaintiff, this was ruled out.

Defendant then offered the record of proceedings in the Probate Court, showing that the executor was removed in 1839, upon the application of his co-executor, Wm. Forbes, but soon afterwards was reinstated, upon giving the bond with plaintiff and defendant as sureties. The record of these proceedings was offered by defendant, to prove that the bond was unlawfully executed and under coercion, against the consent of John C. Love, and to avoid being removed from the duties of his office of executor. Objection being made by plaintiff, the Court refused to admit the record.

The counsel for the defendant then moved the Court to instruct the jury as follows, viz :

1. That, to enable the plaintiff to recover for contribution in this form of action, against a co-security on an executor's bond, and for the default or *devastavit* of the executor, it is incumbent on him to prove that he was compelled by suit at law or in equity, on a valid cause of action, and after all legal defences, to pay the amount on which he seeks contribution ; and in such action it is competent for the defendant to allege and prove in his defence any facts tending to establish the absence of any just cause of action, or any right to recovery in the legatees, heirs, or distributees, for whose use such suit was originally instituted against his co-security.

2. That a bond taken under the law of the State, regulating the duties of executors, &c., being a statutory bond, must, to be valid, pursue the terms of the law, and if variant therefrom, forms no ground or cause of action against the sureties thereon.

3. That such a bond, so far as it enlarges the responsibility of the executor, is void for excess, as regards the responsibility of a surety, and to the extent of such excess ; and that it is the duty of the plain-

tiff, seeking to recover on such a bond against a surety thereon, to prove that the breach of the condition sued on occurred within the limits of the statutory liability, or after the date of the bond.

4. That, before the jury can find for the plaintiff, on the evidence of the settlement made before the County Court on the 2d day of September, 1844, they must be satisfied from the evidence as to what amount of the liability there stated against the executor occurred after the execution of the bond, and can find for nothing more.

5. That there being no judgment recovered or decree obtained by the legatees of John Colson, upon the settlement of accounts made by the auditors, and approved by the Judge of the County Court, there is no breach of the condition of the bond of John C. Love, as executor, upon which the securities can be charged, and that by reason thereof, the plaintiff is not entitled to recover.

6. That the order of the Judge of the County Court confirming the report of the auditors, and ordering distribution of the surplus, not specifying the parties entitled, or the sums to be paid to each, does not amount to a decree for distribution, and is no evidence of a liability on the part of said John C. Love, as executor, to the relatives, at whose instance and for whose use the recovery was had against said James Gibson.

7. That the liability of securities on the executor's bond in this case, does not accrue until a judgment or decree has been *recovered* against him as·executor, and an action on such judgment to establish a *devastavit* has been successfully prosecuted.

8. That, to fix the liability of a security on an executor's bond, for the default or *devastavit* of the executor, it is not sufficient for the plaintiff to produce evidence of a settlement by order of the Court of Probate, without the further evidence of a judgment of a court of equity or of ·law establishing such liability, and that it is not competent for the Court of Probate to order or decree the distribution of the surplus remaining in the hands of the executor.

9. That the order or decree of the Court of Probate, of the date of 21st April, 1845, given in evidence in this cause, not determining the names or respective interests of the heirs or distributees of said estate, did not impose such a duty or obligation on the executor as that his failure to comply therewith fixed the liability of the securities for the amount decreed to be paid by the executor in such order or decree.

10. That no order or decree can be made valid or binding by the Court of Probate for the distribution of the surplus of an estate, except it appear on the face of the proceedings that the executor had been cited to appear, at the instance of the parties interested, or had voluntarily appeared thereat.

11. That the securities on the bond are not responsible for the balances appearing in the account against John C. Love prior to the giving of the bond, if the jury believe from the evidence those balances had been previously appropriated to his use, and that the taking of the bond is evidence of a previous waste.

All which eleven instructions, or any of them, the Court refused to give.

And the defendant also moved the Court to give to the jury the following instructions, viz :

That the bond in this said suit, being taken for the due administration of the estate generally, while the statute of the Territory only prescribed a bond for the "further" due administration of the estate, it is the duty of the party seeking to fix the liability of a surety on such bond, to exhibit a breach of the same after the period of its execution.

That such securities are not responsible for any *devastavit* or default of the executor anterior to such date. Which last instruction the Court did give, but added thereto as follows, to wit : " That, *prima facie*, the decree of the Judge of Probate fixes the extent of liability of the executor and his securities ; that it is for the defendant to show that any of the sums embraced in it, or the account alluded to by it, should not attach as a liability to the securities, as having occurred previous to the execution of the bond.

And further the Court instructed the Jury as follows, to wit :

That a suit in favor of a legatee will not lie against an executor or administrator at law on the administration bond, the remedy being in equity.

That, *prima facie*, the order of the Judge of Probate, ascertaining the amount due to the legatees and ordering its payment, created an obligation on the part of the executor to pay ; that, on failure to do this, his security on the administration bond might pay and claim contribution from a co-security, without requiring all the pre-requisites of a decree, a suit on the bond or *devastavit*, or other legal proceedings against the executor.

To all which rulings of the Court, in admitting evidence and testimony against the objections of defendant to go to the jury, in rejecting the evidence offered by the defendant, in refusing the instructions to the jury prayed for by the defendant, and giving other instructions by the Court to the jury not moved or asked for by the defendant, he by his counsel excepted.

*Randall*, for appellant, argued:

I. That when, as in this case, there is no express promise to pay, the liability of a co-surety for contribution depends upon the fact, whether when the money was paid, there existed a *legal obligation* on the parties-surety jointly to pay. We expect to prove in this case, that neither party to this bond has yet been placed in a position to become *legally liable to pay*, at suit of these relators at law. Skillin *v.* Merrill, 16 Mass., 40—cited 2d Stark. on Ev., 101, 102.

II. No cause of action did or does exist against Daniel Love, by reason of his pretended surety-ship on the alleged executor's bond; that Gibson might have resisted the bond, and that his payment of a pretended and not a real demand against Love, could not involve the latter in any new liability.

We hold the bond void—

1. Because exacted by Judge of County Court, on petition of *a co-executor*, or on his (the judge's) *mere motion*, and not on petition of "legatees, heirs, &c.," against the terms of Florida statute. Act of Nov. 20th, 1828, Sec. 31, Thomp. D., 210. 1 Williams on Executors, 130, 131.

2. If court did exercise a lawful jurisdiction and power in exacting bond in this case, then we say, the bond taken was variant in terms and effect from the one prescribed by statute, and for that reason void. United States *v.* Linn, 15 Peters, 290, 314. United States *v.* Bradley, 10 Peters, 364.

3. That if not void " *in toto*" for these reasons, that, as it extends the condition beyond the terms prescribed in statute, it is void for *the excess.*

But we contend on the above authorities, and on reason that it is void " *in toto*"—

1. It is not valid as a statutory bond.

2. Not valid as a *voluntary bond,* and good as a *common law bond.*

If to be sustained as a common law bond, then it is only suable on by the individual obligee, R. K. Call, and not *by his successors.*— Governor, &c. *v.* Twitty, 1 Dev. 153—cited 1 U. S. Digest, p. 442, sec. 207.

In any aspect, not a ground of action against *sureties*—because it contains no proper *condition*, the breach of which would justify recovery against them. Archbishop of Canterbury *v.* Tappen, 8 Barn. & Cr., 151. 15th E. C. L. R., p. 177–'8.

III. If bond be valid, no such breach of it has occurred, as rendered sureties liable to action brought at suit of these relators. That Gibson paid *too soon*, and under no " legal *compulsion*."

Previous remedy should have been had against principal and exhausted, before resort to sureties. 8 Barn. & Cress., 151. Spottswood *v.* Dandridge, 4 Mum., 293, 296. ·1 Williams' Executors, 363–'4, note. 1 Mum., 1, 12, 20. 2 Blackford, 52. 2 Mum., 24. 1 Wash. Va., 32. 1 Hen. & Mum., 11.

*Thompson,* for appellee :

The parties to this controversy, James Gibson and Daniel Love, were sureties for one John C. Love, as executor of John Colson, deceased, for the due administration of said estate.

John C. Love made voluntary application to the Judge of the County Court of Gadsden, to have his accounts audited and settled. Auditors were appointed, who stated the account, showing a balance against the executor, and their report was confirmed by the Court, who ordered the said John C. Love to pay over the balance so found due by him to the heirs or legatees of said estate. Upon his failure to comply with the order, separate suits were instituted against him and James Gibson, his surety—a recovery was had against Gibson, before the suit against John C. Love was brought to issue, and the latter was dismissed. Gibson, having paid the judgment rendered against him, brought suit in the Court below against Daniel Love, his co-surety, for contribution, and, having obtained judgment for one moiety of the sum so paid, Love now appeals from said judgment.

To maintain this action, the plaintiff in the Court below was bound to show : 1. That defendant was co-surety with him for the principal on the bond, John C. Love.

2. That he was compelled to pay the money, and did actually pay it under such compulsion.

I.—The point first was fully proved by the production of the original bond, which on its face shows the characters in which it was executed by the respective obligors.

· The introduction of this bond in evidence was objected to on various grounds : 1. It is said the bond is void, because not required on the petition of a legatee, heir or security, as provided for in the 31st section of the act of 1828. Thompson's Digest, 210. That this is the only case in which a bond can be required of an executor—the spiritual court in England possessed no such power, and our County Courts do not possess it. That the requisition of the bond was evidently *ex mero motu* of the judge.

To this it may be answered, that the Probate Courts in this country possess a very general jurisdiction in regard to estates, and over executors, administrators, and guardians. A reference to the acts of our Legislature, will show the express grant of powers never possessed by the Ecclesiastical Courts in England. It is by no means clear, that it is not the duty of the Probate Judge to require security of executors in every instance on the grant of letters testamentary, and such is the practice, it is said, in some parts of the State. Indeed, the section of the act referred to, seems to consider it may or ought to be required. The language of the act is, " whenever it shall appear satisfactorily to the said court or judges, on petition of any legatee, heir, or *security*, that any executor who has taken out letters," &c. Now, if executors cannot be compelled to give security, unless they conduct themselves so as to be obnoxious to this section, how does it happen that a *security* is provided for in the enumeration of the persons or parties who have the right to complain ?

It seems from other evidence, offered by the appellant from the records of Gadsden County Court, and rejected in the Court below, that there were two executors of the will of Colson—that a petition was presented by Forbes, who was one of them, against Love, making sundry charges—that citation issued thereon, the parties appeared, and such proceedings had, that by an order the judge dismissed the complaint, and ordered both to give security for the due administration of the estate, by a day certain, or their letters would be revoked. On the day named an order was passed, noting the default and revoking the letters ; and on the same day, John C. Love applied for leave and further time to execute the bond, which was granted him. From all this it appears that the judge, from the pro-

ceedings before him, presumed from the conduct and ill feeling between the executors, that the rights of all interested in the estate were in jeopardy, and required the bond for their protection. A general superintendence and jurisdiction over all matters relating to estates, testate and intestate, being given by the acts organizing the County Court, and the act relating to wills and administration, and such an exercise of jurisdiction not being prohibited, it is not, I think, claiming too much to say, the judge was acting within the scope of his legitimate powers. This order was not appealed from, but submitted to, and the bond in question given.

If, however, there were any objection to the validity of this bond, the appellant here, on being sued for contribution, cannot set it up, unless he had given the appellee notice of it. Cave, use of Wallace, *v.* Burns, 6 Ala. R., 781, 782. Ford *v.* Keith, 1 Mass, R., 139.

2. Another objection is, that the bond was exacted and required by duress, by threats of revocation of letters, &c., and is, therefore, void. It is not believed this can be seriously entertained, when it so clearly appears there was no duress—if the requisition of the bond was erroneous, the party could have had full remedy against it by appeal, which would have suspended the execution of the order, until its adjudication in the Superior Court,

3. Another objection is that the bond is retrospective, and covers acts and defaults of the executor committed anterior to its execution. There is nothing in the bond, as the Court will perceive, which indicates the intention of its framer that it should cover past defaults and such effect will not be given to its language. It is not susceptible of such construction. It is prospective in its terms, as well as effect. That it may and does cover property and moneys in his hand, unadministered at the date of the execution of the bond, is not denied; such, we contend, is its legitimate intention and effect. No *devastavit* is committed until the property or money is misapplied and wasted; and if such misconduct takes place after the bond is executed, the estate is protected by the bond from its consequences. The refusal by the executor to pay a just debt or a legacy, when there ought to be assets in his hands for that purpose, or to distribute the surplus, &c. &c., is evidence at the time of a *devastavit*. Ordinarily, it cannot well be otherwise proved. This throws upon the sureties of the executor to prove, by affirmative testimony, that an actual

waste or loss occurred at some period anterior to the date of the bond.

The Supreme Court of the United States say, in reference to a receiver's bond : " It matters not at what time the moneys had been received, if, after the appointment, they were held by the officer 'in trust for the United States, and so continued to be held at and after the date of the bond." 15 Peters' R., 208. From all that appeared in this case, the funds were in the hands of Love, as executor, at and after the date of the bond ; the first evidence of a *devastavit* is his omission to comply with the order of the judge to distribute the residuum in his hands.

The Court below was evidently right in overruling this objection.

II.—As to the second point : that Gibson was compelled to pay the debt of which he now seeks contribution.

The fact of payment is not contested, but it is denied that he paid it under compulsion.

We hold it to be the law that the compulsion under which a surety acts, who pays the debt and seeks contribution from his co-surety, is not necessarily that of legal proceedings, such as a suit at law or in equity against him, perfected by judgment or decree, but may be upon a legal liability. Addison on Con., 228, 229. Lucas v. Curry, 2 Bailey, 403. 1 Smith's Leading Cases, 139, at top. Hamilton v. Cutts, 4 Mass. R., 351. Pitt v. Pursford, 3 M. & Welsby, 538, and American cases in note. Linn v. McLelland, 4 Dev. & Bat. L. R., 458. Goodall v. Wentworth, 20 Maine R., 324. Story on Contracts, sec. 885, 886.

If he pays without the compulsion of a suit at law or in equity, but on his mere legal liability, then, when he seeks contribution in an action against his co-surety, the *onus* would seem to rest on him of shewing such liability ; and to this extent alone would the authority of Skillin v. Merrill, in 16 Mass. Reports, 40, cited by the other side, seem to go.

But if the surety who pays, awaits a suit and defends it, and his co-surety has knowledge of such suit, or is notified of its institution and pendency, and did participate in its defence or might have done so, the co-surety is deemed and held a privy at law and is concluded by the judgment, unless he can prove it was suffered by the party by fraud and collusion with the plaintiff in the action. See 23 Smith's Leading Cases, 139, at top, citing Smith v. Compton, Eng. Common

Law Reps., 106. Duffield *v.* Scott, 3 T. R., 374, per Buller, Judge. See also Buford *v.* Buford, 4 Munf. R., 241. Blasdale *v.* Babcock, 1 Johns. R., 517. Kip *v.* Brigham, 6 Johns. R., 158. Cartwright *v.* Carpenter, 7 How. Miss. R., 328. Bond *v.* Ward, 1 Nott & McCord's R., 201. Burrill *v.* West, 2 N. Hampshire R., 190. Train *v.* Gold, 5 Pick. R., 386. State *v.* Colerick, 1 Ohio Cond. R., 638. 1 Greenl. Ev., sec. 116.

It appears from the sixth plea filed by appellant, that he had knowledge of the institution and pendency of the suit, and required the appellee to defend it. It appears also from the record, that the appellee did defend the suit, and paid the debt under compulsion of the judgment rendered against him.

This judgment we hold to be conclusive upon the appellant, unless he can impeach it for fraud and collusion—that it is not only evidence of recovery against Gibson, but also evidence of Gibson's liability and, consequently, of the appellant's legal liability to Gibson, for a moiety of the amount paid under it.

III.—The counsel for appellant insist, however, although no fraud or collusion is imputed by any of the pleadings, nor any question of it raised by the evidence, that the payment by Gibson, notwithstanding the judgment rendered against him, was voluntary, inasmuch as he might have resisted and successfully defended the action brought against him, on the executor's bond of John C. Love.

1. It is alleged the County Court exceeded its jurisdiction in the order for distribution of the residuum, made on the settlement of the accounts of the executor.

For the jurisdiction of the County courts of the late Territory of Florida, in relation to the estates of deceased persons, see Thompson's Digest, 195, sec. 1, ar. 1, and note (*e*).

2. It is alleged that the order is erroneous, in not ascertaining with precision the names of the persons entitled to the residuum, and the several proportions of each.

To this it is answered, it does not in any wise appear that the failure to pay over the surplus arose from any doubt or difficulty in this particular ; if he was at any loss he should have applied to the Court for its direction ; but it is to be presumed, from the absence of any complaint, that the will was sufficiently explicit as to the parties and their respective interests. A similar order was held sufficient in the case of Lucas *v.* Curry, cited from 2 Bailey R., 403.

28

Neither does it appear that the failure to pay arose from the refu-sal to give a refunding bond—if one had been demanded and refused, the court would have protected the executor in his requisition. He has undoubtedly a right to have the bond before he pays over, but must refuse on the ground of its non-delivery. Chairman *v.* Mayo, 2 Hawk's R., 329.

3. It is also argued that in this case the County Court ought not to have taken jurisdiction, as there was an infant and a *feme covert* among the distributees, and the Court had not power to protect their interests ; they can only be protected in a court of equity.

It also appears that one was represented by guardian and the other by her husband, and no objection seems to have been made by the executor of any want of proper authority in either to receive, or any impropriety in their receiving the amounts.

The jurisdiction of our County courts is stated in terms very simi-lar to those employed in the Constitution and laws of Mississippi, in the grant of powers to their probate courts, and there it has been held that the powers of their courts, in matters of distribution, are co-extensive with a court of equity. Carmichael *v.* Browder, 3 How. Miss. R., 252.

4. It is also contended that the order is not sufficient—that the executor should have been sued at law or in equity, and a *devastavit* fixed upon him by a regular suit, before the sureties can be called upon ; and various authorities are cited, but they will be found, on examination, to refer to suits at the relation of a creditor.

Until judgment against the executor or administrator for the amount of the debt, and that he has assets to pay it, the demand of the creditor is against the estate. After a judgment of assets, &c., the executor or administrator becomes a trustee for the creditor for the application of the assets to the debt. It is then only that he as-sumes the character which he always bears to the legatees and next of kin, that of a fiduciary.

A recovery against an administrator is not a necessary preliminary to a suit by distributees against the sureties on the bond of such ad-ministrator. Owings *v.* Collinson, 3 Gill & Johns. R., 25. Williams *v.* Hicks, 1 Murphy's R., 437. Chairman *v.* Moore, 2 ibid., 22. Lu-cas *v.* Curry, 2 Bailey's R., 403.

5. It is also urged that the account taken at the instance of Love, the executor, is not binding upon his sureties.

It is certainly *prima facie* evidence of his indebtedness as against his sureties, though they were not present at the time it was taken and the amount ascertained. See Treasurer *v.* Bates, 2 Bailey's R., 362. Lucas *v.* Curry, 2 Bailey's R., 403. Heard *v.* Lodge, 20 Pick. R., 53.

But we admit the sureties might impeach it by direct proof of errors, omissions, &c.; and in this case the appellant availed himself of the opportunity—went into an examination of the accounts, called witnesses, and in this bill of exceptions admits that he failed to show any errors therein, or to establish a *devastavit* prior to the date of the bond.

IV.—As to the exception to the introduction of the Hon. D. L. White to prove the contents of the petition of Love, executor, for a settlement of his accounts, (the loss of which was proved by the testimony of Gilchrist, the present Judge of Probate,) on the ground that a record cannot be proved by parol evidence.

It is laid down that, if a record is lost, after proof of its loss, its contents may be proved, like any other document, by any secondary evidence, when the case does not, from its nature, disclose the existence of other and better evidence. 1 Greenleaf's Ev., sec. 509.— 1 Phillip's Ev., 386–7, and Cowen & Hill's notes, 1067. 2 Hayw. R., 243. Arg't of Haywood. 2 Murphy's R., 255.

V.—Appellant offered to give in evidence, in the Court below, a mortgage executed by John C. Love to the appellee, on real and personal estate, to indemnify him against loss by reason of his suretyship; which, on the objection of appellee was rejected; and this is also assigned for error.

The appellant did not offer any proof with it that anything had been realized by the appellee from this security, or that he might have done so with reasonable diligence. It is not indemnity to defeat this action until it has been effectual as such. The case cited at bar of Knight *v.* Hughes, from 3 Carr & Payne, 467, was one where the surety, who brought his action for contribution, had received money from the common principal to be applied to the debt.

If the appellant has any claim to share the fruits of this security, he should prefer it in a court of equity; and if a proper case was made before the court, it might, by injunction, restrain the appellee from proceeding on his judgment against appellant till the security was exhausted. But alone, it cannot defeat the appellee's action, or reduce the amount of his damages.

But there is another objection to its receipt as evidence. It is, if it is to have any effect, matter in confession and avoidance, and, as such, by Reg. Gen. of January term, 1846, of the Supreme Court, should have been specially pleaded.

I have not noticed the error assigned in overruling and sustaining the demurrers to the pleadings particularly, nor have I entered into a critical examination of the various prayers for instruction refused, or of the charges given to the jury, because I feel satisfied, if I have maintained my positions here assumed, they will be found to cover the whole case, and authorize an affirmance of the judgment of the Court below.

VI.—Some exception was taken to the first or special count in the declaration, which, it was contended, was opened to the appellant by the demurrer to one of his special pleas.

The special count is, I think, substantially good ; but if found by the Court to be defective, yet the count for money paid, laid out and expended by the plaintiff for the defendant, is sufficient without the general count. Upon this point, see Cowell *v.* Edwards, 2 B. & P., 268. Pitt *v.* Pursford, 8 Meeson & Welsby's R., 538. Calton *v.* Simpson, 8 Ad. & Ellis' R., 136.

VII.—It was also alleged that the appellee should have shown the insolvency of John C. Love, the principal in the bond, before he could resort to the co-surety for contribution. Held not necessary in Cowell *v.* Edwards, 2 Bos. & Pul., 268. Judah *v.* Micure, 5 Blackf. R., 171. Roberts *v.* Adams, 6 Porter's R., 361. Goodall *v.* Wentworth, 20 Maine R., 324. Odin *v.* Greenleaf, 3 N. Hamp. R., 270.

Upon the whole case the appellant seems to have had the benefit of every defence which he was entitled to, and that substantial justice has been done between the parties by the judgment of the Court below.

*Archer*, in reply, contended :

1. That the bond upon which Gibson was sued was not a valid bond, and no recovery ought to have been had against him. It was taken contrary to the statute. The condition of it was so framed as to act retrospectively, and not prospectively, as required by statute.

2. There was no breach of the condition. The liability of sureties upon a bond of this character is to pay upon failure of the principal, unless there be something to the contrary expressed in the con-

dition. A refusal by the principal to pay is not a breach, because *non constat* he might be compelled to pay by suit. Before the surety can be made liable, the debt must be reduced to a *personal liability* on the part of the executor, or administrator, by showing waste—by establishing a *devastavit*—by proceedings at law, in chancery, or in the courts of ordinary, if the latter have equity powers. The County Courts, or Courts of Probate in this State do not possess such powers. They, therefore, cannot, by any proceedings authorized by law, ascertain whether there has been a failure of the principal or not. This failure must be ascertained before the surety can be made liable, and this was not done in this case.

3. The relators are not shown to be the proper persons to whom payment should have been made. The suit is by legatees, and yet neither does the pretended order of the County Court show the persons entitled, nor does the will any where show that the relators are residuary legatees—and if so, what were their respective interests.

HAWKINS, Justice, delivered the opinion of the Court :

This was an action of *assumpsit*, brought by Gibson against Love, for contribution of his portion of the amount paid by him (Gibson) upon a judgment recovered in favor of Colson and others, upon an executor's bond. The fact of payment is shown upon the record, and is not contradicted.

It is not the intention of the Court to take up *seriatim* all the errors assigned by appellant, but it will, in a general discussion, express its views and opinions to such extent as may be requisite to a decision of the case.

That the form of the action brought (count for money paid) is proper, there can be no doubt, and it is needless to cite authorities, but we refer to 1 Stephens, N. P., 324. 2 Greenleaf Ev., 93. 6 Meeson & Welsby, 168.

It is contended that the judgment against Gibson, introduced as evidence in the Court below, was not at all conclusive upon Love, and that he had a right to make the same defences as if he had been primarily and originally sued.

It certainly is a rule that a verdict or judgment does not bind any person, unless he be a party to the suit, or be in privity with the party, or possess the power of making himself a party. The question here arises, is the judgment against Gibson to be deemed *res adju-*

*dicata* and conclusive against Love, owing to the facts and circumstances of the case, as shown by evidence, or exhibited by the pleadings.

Where the money sought to be recovered under the count for money paid, has been paid under a judgment against the plaintiff, the record of the judgment is always admissible to prove the *fact* of the judgment and the *amount* so recovered. 1 Phillips & A. on Ev., 507. 4 T. R., 589 ; and where the record only seeks to show as *fact* that the *judgment was rendered*, or the *verdict given*, it can never be considered as *res inter alios acta*. 1 Greenleaf Ev., sec. 538, p. 576.

It is not, however, to be considered as evidence of *ulterior* facts embraced in it, or of those facts on which the judgment is founded, unless the party against whom the action is brought had due *notice* of its pendency, and might have defended it ; in which case the record is said to be conclusive as to all the material facts contained in it. 2 Greenleaf, sec. 116. The rule in relation to notice was laid down by Buller, J., in the case of Duffield v. Scott, et al., 3 T. R., 374, and has been adopted by able legal writers as a cardinal principle, settling the doctrine upon this matter, vide 1 Smith's Leading Cases, 139, 2 Greenleaf, sec. 116, and has also received the sanction of decisions of courts of the highest respectability. Justice Buller remarks : " The purpose of giving notice is not in order to give a ground of action ; but if a demand be made, which the person indemnifying is bound to pay, and *notice be given to him*, and he refuse to defend the action, in consequence of which the person to be indemnified is obliged to pay the demand, that is equivalent to a judgment, and estops the other party from saying that the defendant in the first action is not bound to pay the money."

This principle is reiterated *verbatim* in the case of Smith v. Compton, 3 B. & Ad., 407, and is quoted as decisive authority in Kip v. Bingham, 6 Johnson R., 158. Swarthout v. Payne, 19 John., 296. 1 Wendell, 20.

The same principle is found in 4 Mass. R., 353, and in the case of Clark's executors v. Covington, 7 Cranch, 308, coupled with the proviso, that if the judgment is fairly and honestly obtained. In Blasdale v. Babcock, 1 John. R., 517, a record having been offered in evidence, it was objected to, because the party defendant had received merely notice of the suit, and not notice also *when the cause*

*was actually tried.* It was ruled by the Court that the first notice to defendant was sufficient, and he was bound to know all subsequent proceedings; without a special notice of the time every subsequent court was to be held.

In 13 Johnson, 226, no *actual notice* of pendency of former action was averred, but that the party was a witness in the former suit; this was deemed by Judge Spencer an averment of *a fact tantamount.* We have taken some pains to ascertain the true principle upon this subject of notice, for when correctly understood, the task becomes comparatively easy as to its application. The decisions we have quoted go to the effect to declare, that if notice in this suit has been given to Love, he stands virtually in privity with Gibson, as to the effect of the judgment rendered against Gibson, if that judgment was fairly obtained, and no collusion existed either between Gibson and the parties who recovered the judgment against him, or the principal obligor of the bond.

The defendant in his plea says : " And although true it is, that afterwards, to wit, at Spring Term, 1845, of Gadsden Superior Court, a suit was instituted against said plaintiff, as an obligor on said bond or writing obligatory, in the name of John Branch, Governor, &c., for use of John Colson and others, yet the said defendant in fact saith, that no valid breach of the condition of said writing obligatory was assigned in the declaration in said suit, and no legal cause of action therein set forth, and that the said plaintiff was then and there so advised by the said defendant, and was then and there, before the rendition of the judgment in said suit, called upon and required by said defendant to resist the said suit by all legal ways and means, but that the said plaintiff to the contrary thereof failed, and neglected to make legal defences to said action, and permitted the judgment to be rendered therein, and hath since paid the amount thereof, though not legally compelled to pay the same."

Here is a clear admission by the defendant that he knew of the pendency of the suit, and that, too, in time sufficient to have put in pleas to the action. He says, indeed, that he advised Gibson that there *was no valid* breach of the condition of the bond assigned in the declaration, and *no legal cause* of action therein set forth ; but does not this language indicate rather defects in the mode and manner of conducting the suit, than that no suit at all could be sustained ? Why did he not, if he was so well aware himself of the illegality of the

bond, say so *in totidem verbis* to Gibson ?   But he speaks in gene-
ralities—he uses no definite language—points out no specific error,
and gives no clue by which Gibson was to shape his defence.

The first case cited by us, (Duffield *v.* Scott, 3 T. R., 374,) was
decided directly upon an admission in the pleadings. After Love had
notice of the suit, and, as before remarked, it seems from his plea
it was in time to plead, why did he not request to be permitted to
join in the defence—unite in shaping the pleadings, and in fine, de-
fend the action, although not a party to the record ?   What is the
object of notice in these cases of co-sureties ? It is to enable parties
in interest to do these very things, if they should deem it requisite—
and not, after the utterance of some general allegations of error, ei-
ther to hold aloof altogether, or to stand passively by and await the
termination of the suit ; and then if, perchance, on being sued for
contribution, plead a defence based upon an hypothesis, saying if the
party had pleaded such and such pleas, judgment would not have gone
against him.

If the surety has notice of the suit, and he does not choose to de-
fend it, he thereby waives all the defences he might otherwise have
to the introduction of the instrument to be introduced in evidence,
and his right is gone to contest its validity in a collateral way in a
suit brought by the co-surety for contribution, for it must be deemed
*res adjudicata.*

If there was any thing to show that the judgment was not fairly
obtained, the case would present a different aspect.   But nothing of
the sort appears upon the record.   That the motives of Gibson were
honest can scarcely be doubted, when he pays the whole debt, trust-
ing to the contingencies of litigation to recover half only from a co-
surety with himself.   It is true, he had a mortgage, but this mort-
gage enured as much to the benefit of Love, after paying his portion,
as to Gibson, the principle of substitution applying equally to cases
between co-sureties and those between a surety and his principal.—
Littledale *v.* Robinson, 2 Brock. R., 169.

The principle of contribution does not seem to have sprung from
contract, but it is based on a principle of justice and equity, that one
person should not be singled out by the creditor to pay the whole de-
mand ; and where this occurs, the law intervenes and places sure-
ties relatively to each other in a state of equality as to the amount
paid, and gives the party paying a remedy by action for contribution.

This right of action grows out of an implied agreement, that if one surety shall be compelled to pay the whole, or a disproportionate part of the debt, the other shall pay such a sum as shall render their common burden equal.   On page 290 of 6th Wendell's Reports, the Court remark in relation to this subject : " The action on the money counts are resorted to as substitutes for bills in chancery, and ought to be encouraged, whenever the law affords no other remedy, and where a court of equity would compel the defendant to repay to the plaintiff a sum of money which the latter has been compelled to pay for his benefit."

It is said that there can be no recovery now, because the bond for which the original suit was brought is void, it not having been given in compliance with our statutes.   In accordance with the views we have expressed, that instrument cannot be inquired into in this collateral manner ; if there were objections to its illegality, they should' have been brought forward in the suit against Gibson.   It must be recollected that this bond is not sued upon in this case, but is introduced merely as a piece of evidence, showing the original undertaking and the liability of Love as a joint and several obligor.   Nor was it necessary to the conclusiveness of the former judgment, that issue should have been taken upon the precise point, (for instance, the bond,) which was controverted in the present action ; it is enough if that point was essential to the finding of the former verdict.   1 Greenleaf's Ev., 572—citing 2 Saunders, 159, note, (10.)   7 Pick., 341.   Peake's Cases, 219.   4 Dallas, 436.   Besides, the judgments of courts of competent jurisdiction are presumed to be well founded.· " *Res adjudicata pro veritate accipitur.*"

We feel ourselves supported in the position last taken by the cases· cited by counsel for appellee, from Massachusetts and Alabama.—· Ford *v.* Keith, 1 Massachusetts, 139.   Carr. *v.* Burns, 6 Ala., 780. In the first case, it was decided that a surety may recover of his principal, although the money was paid for him upon a usurious contract made by the principal, and which *he* might have avoided.   In the second, it was held that where one surety has been compelled by' suit to pay the joint engagement, it is not competent for a co-surety, when sued for contribution, to show that the note, as between the' principal debtor and payee, was without consideration.

Besides these, there are other cases showing that, although the' original contract was void, or illegal, or could not have been en-·

forced, if legally defended ; yet, if the money sought to be recovered was paid in good faith, though technical defences were not pleaded, actions of *assumpsit* could be successfully maintained. See Frith *v.* Sprague, 14 Mass. R., 453. Here a party to a bond had paid on account of a breach of it by the principal, and brought *assumpsit* to recover the amount so paid. From the report of the case, it appeared that the bond was given in Turk's Island, and from the opinion of the Court, it would seem that its legality was contested during the trial. The Court say—" But the verdict was right, even if *there was no law authorizing the requisition of the bond* in this case. For admitting that requisition to have been wholly arbitrary on the part of the Government of the Island, the surety who stepped in, in aid of the principal, has a right to indemnity, if he has been compelled to pay the penalty, without any fraud or negligence on his part." See, also, Riley and Wright *v.* Seymour, 1 Wendell, 143.— Swarthout *v.* Payne, 19 John. R., 296.

It is contended, also, that the payment by Gibson was a voluntary one, and that he was not compelled to pay.

The payment of debt by the surety, on the default of the principal, is not deemed a voluntary, but a compulsory payment. It is the legal liability that raises the presumption of a compulsory payment. Chitty on Contracts, 594. Thus, in 8 Mees. & Wels., 538, where one of two persons who, as sureties for a third, signed, together with the principal, a joint and several promissory note, on the note becoming due paid the amount although no demand was made, or action brought against him by the holder, it was held that such payment could not be deemed voluntary, and that he might sue his surety for contribution. 20 Maine Reports, 324. 3 N. H., 270. 5 Howard U. S. R., 103. Hale *v.* Smith. Judgments, too, are presumed to be *in invitum.*   " *In presumptione juris, judicium redditur in invitum.*" Coke Litt., 248.

A mortgage given by John C. Love, the principal obligor, to Gibson, and dated long posterior to the giving of the bond to indemnify Gibson as to his suretyship, was offered in evidence, but was ruled out by the Court. What the party intended to show by its introduction, the record does not show—if to prove payments upon it was the object, and this appeared by the record, the Court would have erred in its rejection, for Gibson would have been obliged to deduct any amount paid or reimbursed him, and he could only be entitled to

contribution on the balance. Theobald on Pr. & Se., 267. But as it does not appear by the record, that it was introduced to show payment, we cannot say that the Court erred in ruling it out.

Upon a review of the whole case, applying those equitable principles of which we have spoken as being appropriate in this form of action, and being of opinion that the judgment against Gibson must be considered as *res adjudicata,* we think that Love is bound in conscience and in law to pay to Gibson the amount which he has advanced for his benefit.

The judgment of the Court below is affirmed.

*Per curiam.*